UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michelle Beers, | Case No. 20-cv-1797 (WMW/JFD) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Experian Information Solutions, Inc., | |
| Defendant. | |

---

Before the Court is Defendant Experian Information Solutions, Inc.'s (Experian) motion for summary judgment. (Dkt. 96.) Experian seeks judgment in its favor as to the only count advanced in Plaintiff Michelle Beers's amended complaint—an alleged violation of the Fair Credit Reporting Act. Beers opposes the motion. For the reasons addressed below, the Court grants Experian's motion for summary.

## BACKGROUND

Beers is a resident of Shakopee, Minnesota, whose debts were discharged in a Chapter 7 bankruptcy in October 2019. Experian is a credit reporting agency (CRA) with a principal place of business in California. This case involves two of Beers's accounts: a Toyota Motor Credit auto lease account opened in September 2016 (Toyota Account) and a LendingClub account opened in April 2018 (LendingClub Account).

On June 28, 2019, Beers filed for Chapter 7 bankruptcy. The bankruptcy judge entered a discharge order in Beers's bankruptcy on October 1, 2019. The discharge order does not specify which of Beers's debts were discharged, instead listing some categories

of debts that were not discharged. The discharge order also emphasizes that it is only a general summary and cautions that exceptions to the discharge exist and the debtor should, therefore, contact an attorney.

The next day, Experian received notice of Beers's bankruptcy discharge from its public records furnisher, LexisNexis Risk Data Management Inc. (Lexis). Approximately one week after this notification, Experian ran an initial bankruptcy scrub that automatically evaluated Beers's credit file and coded debts according to the terms of a class settlement injunction by which Experian is bound.[1] Experian maintains that its protocols are explicitly designed so as to not mark as discharged in bankruptcy those pre-bankruptcy accounts that were current at the time of the bankruptcy filing or had a $0 balance and account status other than "Major Derogatory." Experian contends that, on the date of Beers's discharge and at all times prior to the commencement of this litigation, the LendingClub Account reported a current status and no history of late payments. Experian

---

[1]   Experian is a party to the injunctive settlement entered in the nationwide *White-Hernandez* class action (*White* Injunction). *White v. Experian Info. Sols., Inc.*, 05-1070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008). The *White* Injunction requires Experian and other CRAs to implement procedures to automatically update their reporting of pre-bankruptcy debts that belong to consumers who have received a Chapter 7 bankruptcy discharge. Upon notice of a discharge, Experian must identify dischargeable debts that predate the consumer's bankruptcy petition and apply an "Agreed Bankruptcy Coding" to those debts so that the debts are reported as discharged in bankruptcy with a $0 balance. Pursuant to the terms of the *White* Injunction, Experian assumes that derogatory pre-petition debts are discharged in bankruptcy but "undertake[s] to exclude" accounts that were current at the time of the bankruptcy filing or had a $0 balance and an account status other than "Major Derogatory." This distinction accounts for the following circumstance. A debtor may not have discharged certain debts on which the debtor is, and intends to remain, current. If a CRA misreports non-discharged, current debts as discharged in bankruptcy, the debtor could be harmed by the appearance that the debtor made no effort to remain current on some of the debtor's accounts.

further contends that on the date of Beers's discharge and until April 2020, Beers's Toyota Account reported as paid with a $0 balance.

On April 13, 2020, Toyota purportedly contacted Experian outside of the normal reporting schedule, stated that Beers's Toyota Account was current and had no history of late payments, and added the description "Early termination/balance owing." On June 20, 2020, Toyota again contacted Experian outside of the normal reporting schedule, representing that Beers's Toyota Account was paid with a $0 balance. Experian maintains that, prior to the initiation of this litigation, neither Toyota nor LendingClub notified Experian that Beers's accounts were discharged in bankruptcy.

On April 29, 2020, Beers requested a copy of her Experian credit report. The report stated that the Toyota Account was open, had an outstanding balance of $2,000, and included the notation "Early termination/balance owing." The report stated that the LendingClub Account was open with a balance of $12,792. Neither the Toyota Account nor the LendingClub Account was accompanied by a notation indicating that the accounts were discharged in bankruptcy. After discovering that the two accounts were mislabeled in the Experian report, Beers directed her legal counsel to remedy the mistake. Neither Beers nor Experian has presented any evidence that either Beers or Beers's legal counsel contacted Experian to ask the company to correct the mislabeling of the two accounts.

Beers alleges she was denied a Kohl's card after Kohl's reviewed inaccurate credit information contained in a credit report supplied by Experian. During her deposition, Beers testified that Best Buy also denied her credit due to an inaccurate Experian report. Beers contends that Experian provided credit reports containing the same inaccurate account

information to at least ten other third parties. Beers alleges that she was harmed by Experian's erroneous reports of the status of Beers's Toyota Account and LendingClub Account to these third parties. In the sole claim that Beers advances in her amended complaint, Beers alleges that Experian willfully or negligently failed to establish and/or follow reasonable procedures to assure accuracy in its credit reports, thereby harming Beers, in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681e(b), 1681n, 1681o. Experian moves for summary judgment.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the

4

record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

## I.     The Effect of the 2008 *White-Hernandez* Injunction

Experian contends that Beers is a party to the injunctive settlement entered in the nationwide *White-Hernandez* class action, *White v. Experian Info. Sols., Inc.*, 05-01070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008), and is bound by the terms thereof, including the settlement's preclusion of future litigation challenging the procedures the injunction sets forth and the injunction's determination that those procedures comply with Section 1681e(b) of the FCRA as a matter of law.  Beers maintains that Experian has failed to demonstrate that Beers is a member of the *White* settlement class.  And even if she were a member of the *White* class, Beers argues, the *White* settlement would not preclude Beers from challenging Experian's alleged misreporting of the Toyota Account and LendingClub Account.

Judges in this District have held on at least two occasions that "*White* is not binding on this Court."  *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 771 (D. Minn. 2020); *accord Alsibai v. Experian Info. Sols., Inc.*, 488 F. Supp. 3d 840, 847 (D. Minn. 2020).  Assuming without deciding that this Court is not bound by the *White* injunction, the Court analyzes Beers's FCRA claim.

## II.    Alleged Violation of the FCRA

Beers alleges that Experian willfully or negligently violated the FCRA, an allegation that Experian disputes.  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the

5

information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a claim under Section 1681e(b), Beers must demonstrate that: "(1) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) [Experian] reported inaccurate credit information about her, (3) she suffered harm and (4) Experian's failure to follow reasonable procedures was the cause of her harm." *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011). To survive Experian's motion for summary judgment, Beers must demonstrate that there is some evidence that she suffered actual damages. And to recover statutory damages for willful violations of the FCRA—a claim that does not require proof of injury—Beers must demonstrate that Experian willfully violated the FCRA. 15 U.S.C. § 1681n. The Court addresses Beers's alleged damages and Experian's alleged willfulness, in turn.

### A. Actual Damages

Experian argues that Beers cannot establish that Experian caused her any actual damages. Beers maintains that she presents ample evidence from which a reasonable jury could conclude that Experian caused her to suffer damages.

A negligence claim under the FCRA requires a plaintiff to demonstrate "actual damages sustained by the consumer as a result of the failure" to comply with the FCRA requirements. 15 U.S.C. § 1681o(a)(1). In seeking summary judgment on the issue of actual damages, Experian argues that: (1) there is no evidence that Beers was denied credit based on Experian's misreporting of the Toyota Account and the LendingClub Account; (2) nothing in the record shows that any denial or adverse action that occurred after Beers's bankruptcy discharge was based on Experian's reporting of the Toyota Account and the

6

LendingClub Account, as opposed to the bankruptcy itself; and (3) Beers's allegations of emotional distress are supported solely by her vague testimony, which Experian contends is insufficient. An analysis of each argument regarding actual damages in this dispute follows.

First, the parties dispute whether there is any evidence that Beers was denied credit based on Experian's reporting of the Toyota Account and the LendingClub Account. The record undisputedly establishes that the two businesses to which Experian provided a credit report in connection with Beers's post-bankruptcy credit applications—Capital One and Wings Financial—approved Beers's credit applications. And despite Beers's unsupported allegations to the contrary, the record demonstrates that Experian never reported any information about Beers to Kohl's or Best Buy after Beers's bankruptcy discharge. Viewing the evidence in the light most favorable to Beers, there is no evidence that Experian provided Beers's credit report to an institution that denied Beers credit. Beers has not demonstrated that there is a genuine dispute of material fact as to whether Experian's reporting of the Toyota Account and the LendingClub Account resulted in a denial of credit.

The parties next dispute whether any other adverse actions resulted from Experian's reporting of the Toyota Account and the LendingClub Account, rather than from the fact of Beers's bankruptcy itself. Experian notes that the sole document that Beers has produced in support of her claim that Experian's reporting harmed her credit—a letter from Best Buy denying Beers's credit application—explicitly states that Best Buy denied Beers's credit application because of Beers's bankruptcy *and* lists Equifax as the CRA that

7

supplied Best Buy with the credit information. Beers has not identified evidence in the record that either disputes Experian's argument or demonstrates a genuine dispute of material fact as to whether Experian's reporting of Beers's Toyota Account and LendingClub Account—rather than the fact of Beers's bankruptcy—resulted in any adverse action taken against Beers.

Finally, the parties dispute whether Beers has identified sufficient record evidence of emotional distress to withstand a motion for summary judgment. Actual damages under the FCRA include emotional-distress damages that are "supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.' " *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1244 (D. Minn. 2013) ("While an emotional distress injury may be established solely by a plaintiff's own testimony, the evidence presented by [this plaintiff] does not establish the type of concrete emotional distress that is required to create a genuine injury and actual damages and survive summary judgment under Eighth Circuit law."). Here, there is no evidence that Beers received treatment for any emotional distress she experienced, that she suffered physical injury as a result of her emotional distress or that any other person observed her alleged emotional distress. Because Beers's allegation of emotional distress lacks evidentiary support other than her vague assertions, this evidence is insufficient to demonstrate a genuine dispute of material fact. *See Taylor*, 710 F.3d at 828; *cf. Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (holding that evidence about a plaintiff's well-being, including testimony as to specific

examples of harassment and financial hardship resulting from an incorrect criminal background report, supported a jury award for emotional-distress damages).

As Beers has not met her burden of demonstrating that she sustained actual damages as a result of Experian's reporting, Beers's FCRA claim of negligent noncompliance, pursuant to 15 U.S.C. §§ 1681e(b), 1681o, fails. *See Taylor*, 710 F.3d at 828 (agreeing "with other circuits that a consumer must present competent evidence of actual injury to state a claim under the FCRA" and affirming grant of summary judgment as to a FCRA negligent-noncompliance claim); *accord Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (observing that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment").

For these reasons, the Court grants Experian's motion for summary judgment as to Beers's FCRA negligence claim pursuant to 15 U.S.C. §§ 1681e(b), 1681o.

### B. Willfulness

A plaintiff may recover statutory damages for willful violations of the FCRA. A claim asserting a willful violation of the FCRA does not require proof of injury. *Taylor v. Inflection Risk Sols., LLC*, 519 F. Supp. 3d 517, 521 (D. Minn. 2021). Accordingly, the Court next examines Beers's allegation that Experian willfully violated the FCRA.

The parties dispute whether Experian willfully violated the FCRA. Willful failure to comply with the FCRA does not require a showing of actual injury, 15 U.S.C. § 1681n(a), and includes both knowing and reckless violations of the statute, *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). Recklessness involves an unjustifiably high risk of harm that was either known or so obvious that it should have been known. *Id.*

at 68. An erroneous reading of a statute is willful only if such error is "objectively unreasonable." *Id.* at 69.

Experian argues that it did not report the Toyota Account and the LendingClub Account as discharged in bankruptcy for several independently sufficient reasons. First, Experian notes that the discharge order in Beers's Chapter 7 bankruptcy case did not specify which accounts were discharged. Second, pursuant to the injunction in the *White* settlement, when Beers requested a credit report from Experian, Experian's bankruptcy scrubs were intentionally designed to exclude debts that were in current status at the time of bankruptcy and not more than 90 days delinquent. Experian instituted this procedure pursuant to the *White* settlement in order to minimize damage to consumers—which means that Experian did not assume Beers's Toyota Account and LendingClub Account had been discharged. Third, following Beers's bankruptcy discharge, Toyota contacted Experian outside of its typical monthly reporting schedule on two separate occasions to update the status of the Toyota Account, and Toyota never noted that the account had been discharged in bankruptcy.

Beers counters that Experian knows that the methodology it uses will result in some reporting inaccuracies and that Experian should assume, as a rule, that all debts other than those specifically exempted are discharged in a Chapter 7 bankruptcy. But Beers has not identified, and the Court's research has not found, any applicable legal authority suggesting that the procedures Experian used here for reporting Chapter 7 bankruptcies *willfully* violate the FCRA. Indeed, other courts have concluded that "Experian's reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or

reckless." *See, e.g.*, *Peterson v. Experian Info. Sols., Inc.*, No. 20-0606 (DSD/ECW), 2021 WL 3116073, at *4 (D. Minn. July 22, 2021).  Moreover, Beers identifies no evidence that an inaccuracy resulting from Experian's procedures, to the extent an inaccuracy exists here, occurs more than occasionally.  Assuming without deciding that Experian reported inaccurate information, the Court concludes that there is insufficient evidence on this record for a jury reasonably to conclude that Experian did so willfully.

For the reasons addressed in the foregoing analysis, the Court finds that Beers has failed to demonstrate a dispute as to material facts necessary to establish a claim under the FCRA.  The Court, therefore, grants Experian's motion for summary judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** Defendant Experian Information Solutions, Inc.'s motion for summary judgment, (Dkt. 96), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 25, 2022                                                  s/Wilhelmina M. Wright
                                                                                            Wilhelmina M. Wright
                                                                                            United States District Judge